IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JESUS LOPEZ,

          Petitioner,

  vs.

BEN CURRY, Warden,

          Respondent.

No. C 08-2071 WHA (PR)

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. Respondent was ordered to show cause why the writ should not be granted. Respondent has filed an answer, along with a supporting memorandum of points and authorities and exhibits. Petitioner has responded with a traverse. For the reasons set forth below, the petition for a writ of habeas corpus is **GRANTED**.

## STATEMENT

In 1986, petitioner was sentenced to a term of seventeen years to life in state prison pursuant to his conviction for second-degree murder and assault with a deadly weapon, as well as enhancements of both convictions for the use of a firearm. In 2006, the California Board of Parole Hearings ("Board") granted parole, but the Governor reversed their decision. Petitioner filed habeas petitions challenging the Governor's denial of parole in all three levels of the California courts. The Superior Court of the County of San Francisco denied the petition in a

1  reasoned decision (Resp. Exh. 2). The California Court of Appeal and the Supreme Court of
2  California issued summary denials (Resp. Exhs. 6 & 7). Thereafter, petitioner filed the instant
3  federal petition challenging the Governor's denial of parole.

## ANALYSIS

**A.  STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and

2

convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Ibid.*

Under 28 U.S.C. 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000). In this case, the last reasoned opinion is that of the superior court denying petitioner's habeas petition (Resp. Exh. 2).

**B.    ISSUE PRESENTED**

As grounds for federal habeas relief, petitioner asserts that the Governor's decision was not supported by "some evidence," and thus violated his right to due process.

The Due Process Clause does not, by itself, entitle a prisoner to release on parole in the absence of some evidence of his or her current dangerousness. *Hayward v. Marshall*, 603 F.3d 546, 555, 561 (9th Cir. 2010) (en banc). Under California law, however, "some evidence" of current dangerousness is required in order to deny parole. *Id.* at 562 (citing *In re Lawrence*, 44 Cal.4th 1181, 1205-06 (2008) and *In re Shaputis*, 44 Cal.4th 1241 (2008)). This requirement gives California prisoners a liberty interest protected by the federal constitutional guarantee of due process in release on parole in the absence of "some evidence" of their current dangerousness. *Cooke v. Solis*, No. 06-15444, slip op. 1, 15-16 (9th Cir. June 4, 2010) (citing *Hayward*, 603 F.3d at 561-64); *Pearson v. Muntz*, No. 08-55728, slip op. 7791, 7799-7800 (9th Cir. May 24, 2010) (also citing *Hayward*, 603 F.3d at 562-63).

3

When a federal habeas court in this circuit is faced with a claim by a California prisoner that their right to due process was violated because the denial of parole was not supported by "some evidence," the court "need only decide whether the California judicial decision approving the governor's decision rejecting parole was an 'unreasonable application'[] of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" *Hayward*, 603 F.3d at 562-63 (quoting 28 U.S.C. 2254(d)(1)-(2)); *Cooke*, slip op. at 15. California's "some evidence" requirement was summarized in *Hayward* as follows:

> As a matter of California law, 'the paramount consideration for both the Board and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety.' There must be 'some evidence' of such a threat, and an aggravated offense 'does not, in every case, provide evidence that the inmate is a current threat to public safety.' The prisoner's aggravated offense does not establish current dangerousness 'unless the record also establishes that something in the prisoner's pre- or post- incarceration history, or his or her current demeanor and mental state' supports the inference of dangerousness. Thus, in California, the offense of conviction may be considered, but the consideration must address the determining factor, 'a current threat to public safety.'

*Hawyard*, 603 F.3d at 562 (quoting *Lawrence*, 44 Cal.4th. at 1191, 1210-14); *see Cooke*, slip op. at 16-18 (describing California's "some evidence" requirement).

Here, the Governor denied parole because the gravity of petitioner's second-degree murder was "alone sufficient" evidence that petitioner's "release from prison would pose an unreasonable public-safety risk" (Pet. Exh. 4 at 2). The Governor summarized the circumstances of the murder as follows:

> On October 26, 1983, Jesus Lopez fired his .32 caliber pistol multiple times while inside a bar, killing Robert Barajas and wounding Guadalupe Olmedo.
> According to the probation report, at approximately 1:45 a.m., San Francisco police officers responded to reports of a shooting at a bar. When officers entered the establishment, they found Robert and Guadalupe lying on the ground, each with multiple bullet wounds. Witnesses said that three individuals (one later identified as Jesus Lopez) entered the bar and began drinking beer. Jesus said later in statements during his 2006 parole hearing that while he was at the bar he had an argument with Roger. Jesus went to get his loaded .32 caliber pistol from his car and returned to the bar. According to the probation report, Jesus shot Robert, who was sitting on a barstool. Robert fell off the barstool and onto the floor, at which point, according to a witness, Jesus fired again. Guadalupe was present during the shooting and she was shot multiple times and wounded. Robert received four gunshot wounds and died from his injuries.

4

Jesus told the 2006 Board that he did not know Robert or Guadalupe before he went to the bar that night.

(*Id.* at 1.) The Governor found the murder alone established petitioner's dangerousness if released on parole because it involved "some level of premeditation," a trivial motive of a perceived insult in the bar, "an exceptionally callous disregard for human suffering and life," endangering additional people present in the bar, and petitioner's flight after the shooting (*id.* at 2). The superior court upheld the Governor's denial of parole, finding "some evidence" of petitioner's current dangerousness based solely upon the circumstances of the commitment offense (Pet. Exh. 5 at 9-10).

The state court's decision upholding the Governor's denial of parole, based solely on the facts of the commitment offense, was an unreasonable application of California's "some evidence" requirement. *See Hayward*, 645 F.3d at 562-63. In *Lawrence*, which was announced after the superior court's decision here (*see* Pet. Exh. 5), the California Supreme Court addressed whether the "some evidence" requirement can be met solely by the circumstances of the commitment offense,

> to the extent our decisions in *Rosenkrantz* and *Dannenberg* have been read to imply that a particularly egregious commitment offense *always* will provide the requisite modicum of evidence supporting the Board's or the Governor's decision, this assumption is inconsistent with the statutory mandate that the Board and the Governor consider all relevant statutory factors when evaluating an inmate's suitability for parole, and inconsistent with the inmate's due process liberty interest in parole that we recognized in *Rosenkrantz*.

*Lawrence*, 44 Cal. 4th at 1191 (emphasis in original). The court continued:

> In some cases, such as this one, in which evidence of the inmate's rehabilitation and suitability for parole under the governing statutes and regulations is overwhelming, the only evidence related to unsuitability is the gravity of the commitment offense, and that offense is both temporally remote and mitigated by circumstances indicating the conduct is unlikely to recur, the immutable circumstance that the commitment offense involved aggravated conduct does not provide "some evidence" *inevitably* supporting the ultimate decision that the inmate remains a threat to public safety.

*Ibid.* (emphasis in original); *see also Cooke*, slip op. at 18 (finding California's "some evidence" requires "more than the crime or its circumstances alone to justify the Board's or Governor's finding of current dangerousness").

The evidence of petitioner's "rehabilitation and suitability for parole" was extensive, as

5

described by the Governor:

> In addition to remaining discipline-free for more than 18 years, Mr. Lopez made efforts during his incarceration to enhance his ability to function within the law upon release. He earned his GED in 1991 and completed various basic education, disease prevention, English-as-a-Second Language and bible study courses. He also completed a computer training program and received employment training pertaining to hazardous materials. In addition, he completed vocational training in auto mechanics and received additional training in small engine repair. He worked institutional jobs such as teacher's assistant, chapel clerk, tier tender, culinary cook, carpenter, porter, and tutor. He also worked in plant operations as an electrician's assistant and in prison industry as a furniture finisher and machine operator. He availed himself of an array of self-help and therapy, including Alcoholics Anonymous, Narcotics Anonymous, Life Skills, Inmate Employability Program, Staying Sober Program, Kairos, Amer-I-can, Alternatives to Violence, Life Plan for Recovery, Fatherhood and Anger Management, Rapha 12 Step Program, Hands of Peace, Creative Conflict Resolution, Convicts Reaching Out to People and Impact Program. Mr. Lopez maintains seemingly supportive relationships with family and friends and he received some positive evaluations from mental-health and correctional professionals over the years.
> Regarding his plans for parole, Mr. Lopez mad no residential or employment plans in San Francisco County, his county of last residence, or anywhere else in California. Nevertheless, Mr. Lopez is subject to deportation to Mexico upon release, and he reportedly made plans in Mexico to live with his mother and work on a family ranch.

(*Id.* at 1-2.) The Governor also noted that petitioner had no criminal record prior to the commitment offense, and that he was twenty-three at the time (*id.* at 1). At the parole hearing, petitioner expressed remorse and took responsibility for his actions (*id.* at 3, Pet. Exh. 2 at 58-59). This evidence "of rehabilitation and suitability for parole" is "overwhelming," and "the only evidence related to unsuitability" in this case was "the gravity of the commitment offense." *See Lawrence*, 44 Cal. 4th at 1191.

Furthermore, the commitment offense was "both temporally remote and mitigated by circumstances indicating the conduct is unlikely to recur." *See ibid.* The murder was committed twenty-three years prior to the parole hearing at a bar when petitioner was under a "significant stress in his life" from an incident in which petitioner had been stabbed eleven times (Pet. Exh. 4 at 2-3 (quoting transcript of parole hearing before the Board); Exh. 2 at 45). These circumstances indicate the conduct was unlikely to recur because at the time of the parole denial petitioner was not drinking anymore, had completed a substantial number of alcohol recovery and other self-help programs in prison, and the particular stress from the knife attack

6

1   was greatly diminished because it had occurred over twenty-three years earlier.

2   In addition, at the time of the parole decision, petitioner had served more than twenty-
3   one years in state prison, four more years than his suggested base term of seventeen years.
4   "[A]fter these prisoners have served their suggested base terms, the underlying circumstances of
5   the commitment offense alone rarely will provide a valid basis for denying parole when there is
6   strong evidence of rehabilitation and no other evidence of current dangerousness." *Lawrence*,
7   44 Cal.4th at 1211; *see also Cooke*, slip op. at 18 (under California law, the facts of the
8   commitment offense alone do not constitute "some evidence" of current dangerousness). As
9   described above, there is strong evidence of petitioner's rehabilitation and no other evidence of
10  current dangerousness cited by the Board, the Governor or the state court.

11  Under California law, as explained in *Lawrence*, "the aggravated nature of the crime
12  does not in and of itself provide some evidence of *current* dangerousness to the public unless
13  the record also establishes something in the prisoner's pre- or postincarceration history, or his
14  or her current demeanor and mental state, indicates that the implications regarding the
15  prisoner's dangerousness that derive from his or her commission of the commitment offense
16  remain probative of the statutory determination of a continuing threat to public safety." 44
17  Cal.4th at 1214; *Hayward*, 603 F.3d at 562; *Cooke*, slip op. at 18. Petitioner had no criminal
18  history and a virtually impeccable post-incarceration record, as described above. There was no
19  evidence suggesting current dangerousness in petitioner's demeanor, which was remorseful, or
20  his mental state, which was found by the Board and the examining psychologists not to present
21  a threat of danger to the public if petitioner were released (Pet. Exh. 2 at 35-38, 58-59). In
22  addition, the commitment offense was remote in time and committed under circumstances
23  unlikely to recur, and petitioner had served substantially more time than his base term.
24  Consequently, California's "some evidence" requirement as explained by *Lawrence* was not
25  met in this case simply by the aggravated circumstances of the commitment offense, and the
26  state court, in upholding the Governor's denial of parole based solely on that offense,
27  unreasonably applied the "some evidence" requirement.

28  Pursuant to the standard announced in *Hayward* entitling a petitioner to habeas relief if

7

the state court unreasonably applied California's "some evidence" requirement in upholding the Governor's denial of parole, the petition for a writ of habeas corpus in this case will be granted. *See Hayward*, 603 F.3d 563 (citing 28 U.S.C. 2254(d)(1)); *see also Cooke*, slip op. at 22-23 (granting petition under *Hayward* where parole denial rested solely on commitment because that was not a reasonable application of California's "some evidence" standard).

**CONCLUSION**

The petition for a writ of habeas corpus is **GRANTED**. Within twenty (20) days of the date of this order, the California Board of Parole Hearings must calculate a term for petitioner and set an imminent date for his release in accordance with Section 3041(a) of the California Penal Code. Within ten (10) days of petitioner's release, respondent must file a notice with the court confirming the date on which petitioner was released.

The clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: June 14, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.08\LOPEZ2071.RUL.wpd